UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BRENDAN MCGARRETT,           )
            Petitioner       )
                             )
        v.                   )    CA 05-30205-MAP
                             )
                             )
UNITED STATES OF AMERICA,    )
            Respondent.      )

GOVERNMENT'S RESPONSE TO BRENDAN MCGARRETT'S
§ 2255 MOTION TO VACATE, SET ASIDE OR CORRECT HIS SENTENCE

The United States of America, by and through William M.
Welch II, Assistant United States Attorney, submits this
memorandum in response to Brendan McGarrett's § 2255 Motion and
Memorandum.

I.    BACKGROUND

On July 11, 2002, Brendan McGarrett (hereinafter
"McGarrett") was arrested and charged by the Commonwealth of
Massachusetts for the armed robbery of a convenience store in
Palmer, Massachusetts.  On November 11, 2002, a federal grand
jury indicted McGarrett for possession of a sawed-off shotgun, in
violation of 26 U.S.C. § 5861(d); possession of a firearm by a
convicted felon, 18 U.S.C. §§ 922(g)(1); and possession of
ammunition by a convicted felon, 18 U.S.C. §§ 922(g)(1).

On June 9, 2004, McGarrett pled guilty to possession of a
sawed-off shotgun and possession of a firearm and ammunition by a
convicted felon.  Attorney Peter Ettenberg represented McGarrett.

1

At the time of the entry of his guilty pleas, McGarrett faced a guideline range of 151 to 188 at a Total Offense Level 29 and a Criminal History Category VI. See Exhibit A, Sentencing Transcript, pg. 12.

On June 24, 2004, the U.S. Supreme Court decided United States v. Blakely. Attorney Ettenberg subsequently lodged objections to all of McGarrett's enhancements under Blakely. Attorney Ettenberg successfully attacked a two level upward adjustment for obstruction of justice and a four level enhancement for commission of a felony while in possession of a sawed-off shotgun. Id. at 6-8. This reduced McGarrett's Offense Level to 26, which, after credit for acceptance of responsibility, resulted in a reduced sentencing range of 92 to 115 months. Id.

On behalf of his client, Attorney Ettenberg had McGarrett evaluated by a local psychiatrist and moved for a downward departure. Id. at 12-17. The court denied the motion for the reasons stated on the record. Id. at 17-20.

McGarrett now moves to set aside his sentence. First, he argues that Attorney Ettenberg was ineffective because Attorney Ettenberg did not file a notice of appeal despite McGarrett's specific instruction that he do so. Second, McGarrett argues that Attorney Ettenberg should have argued that McGarrett's prior conviction for grand theft was not a crime of violence, and,

2

therefore, should not have served as a predicate crime to enhance his Offense Level under §2K2.1. Finally, McGarrett argues that Attorney Ettenberg should have argued that possession of a sawed-off shotgun is not a crime of violence, and, therefore, not a qualifying predicate crime under §4B1.1, the career offender provision.

## II. MCGARRETT CANNOT SATISFY THE STRICKLAND STANDARD FOR ANY OF HIS CLAIMS BECAUSE MCGARRETT EITHER HAS NOT PROVEN HIS CLAIM BY A PREPONDERANCE OR HIS LAWYER WAS NOT INEFFECTIVE.

### A. The Strickland Standard

Collateral relief under § 2255 is extraordinary and is appropriate only if the claimed defect: (1) is constitutional or jurisdictional; (2) is a fundamental defect resulting in a complete miscarriage of justice; (3) is an omission that is inconsistent with the rudimentary demands of fair procedure; or (4) creates an exceptional circumstance in which the need for habeas relief is apparent. United States v. Timmreck, 441 U.S. 780, 784 (1979). The movant must demonstrate ineffective assistance of counsel as well as entitlement to § 2255 relief, by a preponderance of the evidence. Lema v. United States, 987 F.2d at 48, 51 (1st Cir. 1993); Barrett, 965 F.2d at 1186.

In Strickland, the Supreme Court established a two-prong test for determining ineffective assistance of counsel on a § 2255 motion. The petitioner must prove both that (1) his counsel's conduct was deficient, and (2) the petitioner was

3

prejudiced as a result of that deficient conduct. <u>Strickland</u>, 466
U.S. at 687; <u>United States v. Frady</u>, 456 U.S. 152, 167 (1982);
<u>United States v. Fisher</u>, 3 F.3d 456, 463 (1st Cir. 1993). As a
guide when applying this test, the <u>Strickland</u> court noted that
the fundamental fairness of the trial is the ultimate focus.
Thus, courts need not decide one prong before the other, and a
finding against the petitioner in either area is sufficient to
find wholly for the Government.

In order to demonstrate deficient conduct under the
<u>Strickland</u> standard, McGarrett must prove that his counsel's
conduct fell below an objective standard of reasonableness.
<u>Strickland</u>, 466 U.S. at 688. Due to the difficulties in making
such evaluations, a court "must indulge a strong presumption that
counsel's conduct falls within the wide range of reasonable
professional assistance." <u>Id.</u> at 689. Once the defendant has
identified the acts or omissions alleged to be ineffective, the
reviewing court "must reconstruct the circumstances of counsel's
conduct and evaluate it from counsel's perspective at the time."
<u>Perron</u>, 742 F.2d at 673. The determination of whether trial
counsel's performance was sufficient rests on the facts presented
at the hearing, and the reviewing court should not use the
benefit of hindsight to second-guess tactical decisions made by
an attorney unless they are unreasonable. <u>See</u> <u>Strickland</u>, 466
U.S. at 690; <u>United States v. Teague</u>, 953 F.2d 1525, 1535 (11th

Cir. 1992). In Strickland, the Supreme Court also cautioned against the all too tempting practice of a court "examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689.

The second prong in the test set out by Strickland is that the assistance by counsel specified as ineffective must have prejudiced the petitioner in some way. This is not a situation where prejudice must be presumed or inherent because the Government is not responsible for, is unable to prevent, and should not be held accountable for attorney errors. Strickland, 466 U.S. at 693. Although courts have traditionally applied the Strickland standard to determine prejudice, this standard has been modified somewhat by the Court in Lockhart, 113 S.Ct. 838. Under Strickland, a petitioner has been prejudiced only if, but for attorney error, there is a reasonable probability that there would have been a different outcome. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; Lopez-Nieves v. United States, 917 F.2d 645, 648 (1st Cir. 1990). Moreover, the test should not be applied as verdict-determinative; the burden rests on the petitioner to show by a preponderance of the evidence that the errors were so serious as to have deprived him of a fair trial. Strickland, 466 U.S. at 693-96. See Myatt v. United

5

States, 875 F.2d 8, 11 (1st Cir. 1989); DiCarlo, 575 F.2d at 954.
"It is not enough for the defendant to show that [counsel's]
errors had some conceivable effect on the outcome of the
proceeding." Strickland, 466 U.S. at 693. Rather, a reviewing
court must look at "the whole of the testimony" to determine
"whether the [§ 2255] petitioner has carried his burden of proof
and shown his right to a discharge." Walker v. Johnston, 312
U.S. 275, 287 (1941).

The Supreme Court reaffirmed the Strickland prejudice
standard in Lockhart, reiterating that the essence of an
ineffective-assistance claim is that the error so affected the
adversarial balance that the trial was rendered unfair and the
verdict rendered suspect. In that context, the Court stated:

> [t]hus, an analysis focusing solely on mere
> outcome determination, without attention to
> whether the result of the proceeding was
> fundamentally unfair or unreliable, is
> defective. To set aside a conviction or
> sentence solely because the outcome would
> have been different but for counsel's error
> may grant the defendant a windfall to which
> the law does not entitle him.

Lockhart, 113 S.Ct. at 842-843 (footnote and citation omitted).
Furthermore, a proceeding is not fundamentally unfair or
unreliable unless counsel's ineffective behavior deprives the
petitioner of a "substantive or procedural right to which the law
entitles him." Id. at 844.

6

## B. **The Notice of Appeal Claim**

"A `counsel's failure to file a notice of appeal when so instructed by the client constitutes ineffective assistance of counsel for the purpose of section 2255.' Estes v. United States, 883 F.2d 645, 648 (8th Cir. 1989)(citations omitted)." Yodprasit v. United States, 294 F.3d 966, 969 (8ᵗʰ Cir. 2002). "A showing of actual prejudice is not necessary. Barger, 204 F.3d at 1182 (citing Holloway v. United States, 960 F.2d 1348, 1356-57 (8th Cir. 1992))." Yodprasit, 294 F.3d at 969.

"Nevertheless, for a petitioner to succeed, he must show that he made his desire to appeal evident to his attorney. See Barger, 204 F.3d at 1182." Yodprasit, 294 F.3d at 969. "`A bare assertion by the petitioner that [he] made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition.'" Yodprasit, 294 F.3d at 969 (citations omitted). Where a petitioner's counsel disputes his former client's accusations, an evidentiary hearing may be appropriate. United States v. Taylor, 258 F.3d 815, 818 (8ᵗʰ Cir. 2001); Holloway v. United States, 960 F.2d 1348, 1357 (8th Cir.1992). For example, "if the motion, files, and records of the case were inconclusive regarding whether [defendant] instructed his counsel to file an appeal, we would be compelled to remand this claim to the District Court for a hearing on the issue of whether [defendant]

requested his counsel to file an appeal." Id. at 1357.

In the present case, Attorney Ettenberg has filed an affidavit indicating that McGarrett never instructed him to file a notice of appeal. See Exhibit B. He disputes McGarrett's assertions. McGarrett's only evidence is his word and that of his mother. Given the fact that the record may be inconclusive on this issue, an evidentiary hearing may be necessary so that the court can determine who is more credible.

## B. **Grand Theft Claim**

Attorney Ettenberg was not ineffective for not arguing that the grand theft conviction did not qualify as a predicate crime of violence under §2K2.1(a)(1). Application Note 5 states that the definition of a crime of violence under §2K2.1(a)(1) "has the meaning given that term in §4B1.2(a) and Application Note 1 of the Commentary to §4B1.2." §4B1.2(a)(2) defines a crime of violence as a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another."

Consistent with Taylor v. United States, 495 U.S. 575 (1990), the First Circuit has taken "a formal categorical approach to the question of whether a felony constitutes a crime of violence" within the definition of §4B1.2(a). United States v. Winn, 364 F.3d 7, 9 (1st Cir. 2004). However, the First Circuit has previously held that "even if force (actual or threatened) is not an element of the offense, a crime may still be a crime of

violence if it falls within the `otherwise' clause of subsection (ii), that is, if it `involves conduct that presents a serious potential risk of physical injury to another.'" Id. (quoting United States v. DeJesus, 984 F.2d 21, 23 (1st Cir. 1993). "The linchpin of the taxonomy, then, is not the breadth of the statutory sweep but the degree of risk, expressed in terms of the probability of physical harm presented by the mine-run of conduct that falls within the heartland of the statute." Id. at 24. Therefore, in the post-*Taylor* era, the First Circuit has classified larceny against a person as a crime of violence pursuant to §4B1.2(a)'s definition because of the risk of potential force involved in the crime. Id. at 24-25. See also United States v. Wofford, 122 F.3d 787, 793 (9th Cir. 1997)(grand theft is a crime of violence under §4B1.2(a)).

At the time of McGarrett's sentencing, DeJesus was settled law within the First Circuit. Grand theft under South Dakota law, like the larceny statute considered by the First Circuit in DeJesus, has the identical element of "taking" from another. See Exhibit C. Therefore, given the settled law at the time, Attorney Ettenberg could not mount a compelling legal challenge to McGarrett's grand theft conviction as a crime of violence under §4B1.2(a), and it was objectively reasonable for Attorney Ettenberg not to do so.

Instead, Attorney Ettenberg properly attacked that

9

enhancement under <u>Blakely</u> and <u>Almendarez-Torres</u>.  That argument
did not prevail in the district court, nor would it today,
because <u>Blakely</u> and now <u>Booker</u> do not require a jury to find
prior felony convictions beyond a reasonable doubt or a defendant
to admit prior felony convictions.  Lastly, a court's
determination of whether or not a particular offense is a crime
of violence is not judicial factfinding.  Instead, it is simply a
determination of whether or not a particular crime and its
statutory elements contemplate the potential risk of violence
sufficient to render that offense a crime of violence.

Finally, McGarrett invokes <u>Shepard</u>, and claims that <u>Shepard</u>
bars the court from finding that the grand theft conviction was a
crime of violence.  However, the determination that the grand
theft conviction was a crime of violence did not require the
court to look behind the statutory elements.  The mere fact that
grand theft statutorily requires a taking from another,
regardless of the actual or contemplated use of force in the
commission of the crime, is sufficient under §4B1.2(a).
Therefore, <u>Shepard</u> is inapplicable.[1]

Finally, even if <u>Shepard</u> applied, courts have uniformly held
that <u>Shepard</u> is not retroactive.  <u>See</u> <u>Darco v. United States</u>, Slip
Copy, 2005 WL 1804475 at *4 (E.D.N.Y. 2005); <u>Olivas-Gutierrez v.</u>

---

[1]It should be noted that <u>Shepard</u> was decided after
McGarrett's sentencing.  Therefore, Attorney Ettenberg could not
be faulted for not raising <u>Shepard</u>.

10

<u>United States</u>, EP05-CA-0139, 2005 WL 1241871 (W.D. Tex. May 19, 2005); <u>Langley v. United States</u>, 1:04CV952, 2005 WL 1114710 (M.D.N.C. May 5, 2005); <u>United States v. Olusajo</u>, CRIM. 02-584, 2005 WL 1124099 (E.D.Pa. May 5, 2005)("It is unlikely that <u>Shepard</u> would be given retroactive applicability"); <u>Morales v. United States</u>, Civ.03-980, 2005 WL 807051 (D.Minn. Apr.7, 2005). Accordingly, McGarrett could not be granted relief under <u>Shepard</u>.

### C. **Sawed-Off Shotgun Claim**

Attorney Ettenberg was not ineffective for not arguing that possession of a sawed-off shotgun is a crime of violence.  As McGarrett concedes, "every Circuit that has considered the issue has determined that a prior conviction for possessing a sawed-off shotgun constitutes a crime of violence." <u>Motion</u>, pgs. 10-11. The First Circuit was one such circuit that had decided this issue. <u>United States v. Dueno</u>, 171 F.3d 3, 4 (1st Cir. 1999); <u>United States v. Fortes</u>, 141 F.3d 1, 6-8 (1st Cir. 1998). Therefore, this issue was settled law at the time of McGarrett's sentencing, and it was objectively reasonable for Attorney Ettenberg not to advance an unwinnable argument.

The fact that <u>Dueno</u> and <u>Fortes</u> were decided prior to <u>Blakely</u>, <u>Booker</u> and <u>Shepard</u> is irrelevant.  The determination that the possession of a sawed-off shotgun is a crime of violence is not judicial factfinding.  As noted by the First Circuit in <u>Fortes</u>, it is the inherent danger posed by possessing such a

11

dangerous weapon that makes possession of a shotgun a crime of violence.  McGarrett assumed that inherent danger when he possessed the sawed-off shotgun.  What McGarrett was doing at the time with the sawed-off shotgun is irrelevant.  The simply fact that he possessed a sawed-off shotgun, and that he admitted that he possessed that firearm during his guilty plea, satisfies the Sixth Amendment concerns raised in <u>Blakely</u>, <u>Booker</u>, and <u>Shepard</u>.

V.   Conclusion

For the reason set forth above, McGarrett's Motion to Vacate, Set Aside or Correct His Sentence should be denied on claims two and three, but an evidentiary hearing should be set for claim one.

Respectfully submitted,

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

by: _____
WILLIAM M. WELCH, II
Assistant U.S. Attorney

12

CERTIFICATE OF SERVICE

Hampden,  ss.                          Springfield, Massachusetts
                                       November 2, 2005


       I, William M. Welch II, Assistant U.S. Attorney, do hereby
certify that I have served, by first class mail, a copy of the
foregoing, to Brendan McGarrett, pro-se, Reg. No. 90695-038, U.S.
Penitentiary Allenwood, P.O. Box 3000, White Deer, PA 17887 and
Peter L. Ettenberg, Esq., Gould & Ettenberg, 370 Main Street,
Worcester, MA  01608.


                              _____
                              WILLIAM M. WELCH II
                              Assistant U.S. Attorney

13

1      UNITED STATES DISTRICT COURT
       DISTRICT OF MASSACHUSETTS
2        WESTERN SECTION

3

4

5  UNITED STATES OF AMERICA . Docket No. CR 02-30042-MAP
           .
6     v.      . Springfield, MA
           .
7  BRENDAN McGARRETT   . December 14, 2004
  . . . . . . . . . . . . . . . . . . . . . . 3:21 p.m.
8

9

10

11      TRANSCRIPT OF SENTENCING HELD

12   BEFORE THE HONORABLE MICHAEL A. PONSOR,

13    UNITED STATES DISTRICT COURT JUDGE.

14

15

<u>APPEARANCES</u>:

16

17 For the government: William Welch, Assistant U.S.
         District Attorney, 1550 Main Street,
18         Springfield, MA 01103.

19

 For the defendant:  Peter Ettenberg, 370 Main Street,
20         Worcester, MA 01608.

21

22

23     Alice Moran, CSR, RPR, RMR
     Official Federal Court Reporter
     1550 Main Street, Room 536
24      Springfield, MA 01103
   Tel: 413-731-0086  Fax: 413-737-7333
25      amoran@prodigy.net


GOVERNMENT
EXHIBIT
A

1                (Hearing commenced at 3:21.)

2

3           THE CLERK:   This is the case of United States

4    versus Brendan McGarrett, Criminal Action 02-30042.

5           THE COURT:   I want to do the McGarrett matter

6    so that we can get to the situation with regard to the

7    marshals and then I'll go over from there to the Reyes

8    matter and then to the Hutchins matter.

9        We're here this afternoon to address the sentencing

10   of the defendant Brendan McGarrett following his plea of

11   guilty to possession of a sawed-off shotgun, possession

12   of ammunition, and being a felon in possession of a

13   firearm.

14       I would like to go over what I have read in

15   preparation for this sentencing, and then I would like to

16   address first the objections that have been filed to the

17   presentence report and then the motion for downward

18   departure that's been filed by you, Mr. Ettenberg, on

19   behalf of Mr. McGarrett.

20       I have, of course, read the presentence report very

21   carefully.  I have read the letters that have been

22   submitted, some of them just a few moments ago.  I have

23   taken time to read them, from the defendant's mother

24   Annie, from an individual by the name of Fran Freeman,

25   from his sister, Lorraine McGarrett, and from an

1    individual who is a close personal friend, Mary Frances

2    Genacovich. I have also read Mr. McGarrett's own letter

3    to me and I believe -- yes, those are the letters.

4        I have a couple of copies -- I have some that I had

5    two copies of but I have read all those, and I believe

6    those are all the communications on behalf of the

7    defendant that have been sent to me.

8        I also have the statement of Sarah Gagne who was the

9    individual who was the victim of the defendant's attack

10   when he was using the sawed-off shotgun.  She was a clerk

11   at the store which he robbed on the night that he was

12   found to be in possession of the sawed-off shotgun.

13       I've also read the motion for downward departure

14   that has been submitted on behalf of Mr. McGarrett.  I

15   believe that covers everything that I need to look at in

16   preparation for this proceeding.

17       I'd like to turn now to the objections to the

18   presentence report.  The government, I take it, has no

19   objections to the presentence report?

20            MR. WELCH:  Correct.

21            THE COURT:  All right.  And I apologize if I

22   should recognize the person that you have with you at

23   counsel table, you may have been here before and if you

24   have, I'm sorry but perhaps you could remind me.

25            MR. WELCH:  ATF Special Agent Debra Seafert

1        THE COURT:  Seaford.

2        MR. WELCH:  Seafert, E-R-T.

3        THE COURT:  Thank you.  The defendant's

4   objections mostly focus on the <u>Blakely</u> issue and the

5   issue of the enhancements in the calculation of the

6   offense level and the issue of certain aspects of the

7   defendant's criminal record which are included in the

8   calculation of his criminal history.

9        The first objection has to do with the upward

10  adjustment for obstruction of justice, and the defendant

11  objects on the ground that the conduct which forms the

12  underlying basis for the enhancement based upon

13  obstruction of justice has to do I believe with the

14  high-speed chase that occurred when the law enforcement

15  was attempting to place the defendant in custody.  And

16  this is not conduct which the defendant admitted to, I

17  don't think, at the plea proceeding and, therefore, under

18  <u>Blakely</u> cannot be considered by me in determining what

19  the defendant's sentence should be.

20       Is that the essence of your objection?

21       MR. ETTENBERG:  Judge, that's the essence of

22  that objection and that's the essence that follows

23  through in all of my objections that I provided to you.

24  I don't mean to jump way ahead but that's going to be the

25  basis on all of the objections.

1          THE COURT:  Right.  Some of them have to do

2     with the defendant's prior criminal record which

3     represents a harder sell from the defendant's point of

4     view because Blakely didn't cover that.  In fact, I

5     believe Blakely specifically excluded prior record as a

6     factual area which had to be either found by a jury or

7     agreed to by the defendant or conceded by the defendant.

8          What's the government's position with regard to the

9     obstruction enhancement?

10          MR. WELCH:  Well, my position is simply just

11     for the record that Blakely does not apply.  Blakely

12     applies to a state sentencing scheme.  It does not apply

13     to U.S. guidelines.  I agree with the Court that

14     obstruction of justice was not specifically an

15     enhancement he admitted at the plea colloquy.

16          THE COURT:  All right.  The government's rights

17     are saved on that.  We have a lot of things on our plate

18     here this afternoon so I won't do my usual 15 minute

19     speech on what my position is on Blakely.

20          But essentially my position is that Blakely does

21     apply to the federal sentencing apparatus.  That it is

22     not fatal to that entire apparatus, but it simply means

23     in imposing a sentence I am not permitted to consider

24     facts which haven't either been admitted by the defendant

25     or found by a jury.

1    Since the facts which would constitute the

2    obstruction in this case do not fall within that

3    category, I'm going to sustain Objection Number 1 and I'm

4    going to delete the two-point enhancement for obstruction

5    of justice from the calculation of Mr. McGarrett's

6    offense level.

7    Objection Number 2 has to do with the claim that the

8    offense level involved a two-level increase because the

9    defendant committed the offense subsequent to sustaining

10    at least two felony convictions of either a crime of

11    violence or a controlled substance.

12    That enhancement I believe is appropriate because it

13    is something which takes into consideration the

14    defendant's prior record and not facts related to what we

15    might call relevant conduct in this case.

16    I know the Supreme Court is currently considering

17    the <u>Almenden-Torres</u> decision, if I'm pronouncing that

18    correctly, and we may get a decision on that and it might

19    even be coming out as I speak but it hasn't come out yet,

20    and under that Supreme Court authority I am entitled to

21    take into consideration the defendant's prior record.  So

22    Objection Number 2 is overruled.

23    Objection Number 4 (sic) has to do with the fact

24    that when the defendant was in possession of the

25    sawed-off shotgun, he used the sawed-off shotgun to

1    commit a felony, an absolutely terrifying felony, and

2    anyone can appreciate that particularly in view of the

3    statement of Ms. Gagne, an 18-year-old woman who was

4    confronted with a man in a black ski mask poking a

5    sawed-off shotgun in her face swearing at her and telling

6    her to give him all the cash in the cash register, an

7    incident which she has not yet recovered from and

8    probably never will recover from.

9        Ordinarily I would be entitled to take that conduct

10   into consideration but, again, I do not believe that was

11   conduct that the defendant specifically admitted to

12   during the plea colloquy and therefore I believe that the

13   government's position would be the same and from my point

14   of view probably the result would be the same, unless

15   there's something in the plea colloquy that I overlooked.

16       MR. WELCH:  Well, I think it's a little

17   different in that the possession of a sawed-off shotgun

18   centered around the armed robbery; meaning a plea to the

19   possession was a plea to the commission of the armed

20   robbery, so as a result when he pled guilty to Count 1,

21   he, in essence, admitted the facts underlying the

22   possession which was in fact the armed robbery.

23       THE COURT:  Okay.  What do you say, Mr.

24   Ettenberg?

25       MR. ETTENBERG:  I disagree obviously, Judge.  I

1  think that the possession of the firearm stands alone.

2  There may be the inference that you can leap to but I say

3  that that's not a leap that you should infer in this

4  particular case.

5      I suggest that the sawed-off shotgun stands alone.

6  That's what he was charged with; that's what he admitted

7  to within the plea colloquy is the possession of the

8  firearm.

9          THE COURT:  All right.  The government's rights

10  are saved as to Objection Number 3 but I'm going to

11  sustain Objection Number 3 and I'm not going to include

12  the four-level enhancement for commission of a felony

13  while in possession of a sawed-off shotgun.

14      Objection Number 4 relates to the career offender

15  calculation, and that is again at least -- unless I'm

16  overlooking something -- anchored on the fact that the

17  defendant has certainly a very serious prior criminal

18  record and I'm inclined to overrule that unless you have

19  some argument that I haven't noted, Mr. Ettenberg?

20          MR. ETTENBERG:  No, Judge.

21          THE COURT:  Objection Number 4 is overruled.

22  Objection Number 5, again, criminal history, that is

23  overruled.  Objection Number 6, also criminal history

24  category, overruled.

25      Objection Number 7, criminal history, overruled.

1    Objection Number 8, criminal history, overruled.

2    Objection Number 9, criminal history, overruled.

3    Objection Number 10, criminal history, overruled.

4         That's how I will handle those.  We then have the

5    Blakely issues and the issue of the enhancements, and

6    there is a discussion of the objections but I believe

7    those are all the objections that are -- are there other

8    objections that require a ruling?

9              MR. ETTENBERG:  No, Judge.

10             THE COURT:  The result of my rulings on the

11   enhancement is that the defendant is at an Offense Level

12   26.   He receives a three-level reduction in his offense

13   level based upon acceptance of responsibility which puts

14   him at an Offense Level 23.

15        The defendant, because he is a career offender, is

16   automatically in a Criminal History Category VI which

17   means at an Offense Level 23, Criminal History Category

18   VI, he is facing a sentencing guideline range -- I

19   believe the top of the range is 115 months.  Yes, 92 to

20   115 months, and I believe that is the guideline range

21   that we're talking about for purposes of this particular

22   situation.

23        Even though I'm not using the career offender

24   offense level, he is nevertheless a career offender and

25   if his offense level is higher than the 21, that 23 is

1    the offense level that I'm required to use and that I

2    think is appropriate for me to use but the criminal

3    history category remains a Criminal History Category VI

4    based upon his career offender status.

5        Did you want to be heard on that, Mr. Ettenberg?

6        MR. ETTENBERG:  Judge, I'm going to take the

7    position that the criminal history ought to be four based

8    on the guidelines that deal with career offenders.

9        I understand the argument that the career offender

10    would automatically jump it to six, but I suggest that

11    the career offender statute, if you're going to sentence

12    -- we're dealing sort of with a hybrid.

13        It seems to me with the career offender and the

14    guidelines here, there may be somewhat of a double

15    counting in some fashion here.  I'm not sure if I'm

16    articulating it correctly.

17        THE COURT:  I understand what you're saying.  I

18    was concerned about it as I prepared for the sentencing,

19    but my understanding of the law is that when somebody is

20    a career offender, then the offense level -- the criminal

21    history category is always a six even if the calculation

22    of the offense level may be higher than what the offense

23    level would be using the career offender regulations.

24        So your rights are saved on that but in my opinion

25    it's a Criminal History Category VI, Offense Level 23.

1        Did you want to be heard on that, Mr. Welch?

2               MR. WELCH:  I don't.

3               THE COURT:  All right.

4               PROBATION OFFICER:  Your Honor, I have the

5        actual cite right here.  It's 4B1.1(b), except as

6        provided if the offense level for a career offender from

7        the table in this subsection is greater than the offense

8        level that's applicable, use the offense level below.  A

9        career offender's criminal history category in every case

10       under this subsection shall be a six.

11              THE COURT:  Right.  That's my understanding of

12       the law.  If for some reason I got it wrong, your rights

13       are saved.

14         There being no other objections to the presentence

15       report, I want the record to reflect that I have read the

16       presentence report carefully.  I am aware of all of its

17       details.  I do not feel it necessary to recite all those

18       details but I have all of them in mind as I approach my

19       responsibility here and I incorporate the contents of the

20       presentence report into this sentencing proceeding.

21         I am, as I said before, at a Criminal History

22       Category VI, Offense Level 23, which contemplates a

23       Sentencing Guideline range of from 92 to 115 months.

24         I'd now like to address the issue of the motion for

25       downward departure.  I think it's worth observing before

1    we get to the downward departure that because of the
2    intervention of the Supreme Court's <u>Blakely</u> opinion
3    between the date that Mr. McGarrett offered his plea and
4    the day of the sentencing, he's getting a fairly
5    substantial what I will call <u>Blakely</u> bonus.

6        Absent the Supreme Court's <u>Blakely</u> decision, the
7    offense level would be six points higher than what it is
8    now.  It would be at a 29, Criminal History Category VI
9    and he would be looking at a sentence in the 151 to 188
10   month range.  In other words, a sentence of roughly 12 to
11   15 years or more than 12 to 15 years, and as it is now —
12   I don't mean to suggest that this is not a very serious
13   sentence — but he's in the nine to ten-year range.

14       So there's been a bonus, if I can put it that way,
15   because of the anomaly of the Supreme Court's opinion
16   which lowered Mr. McGarrett's applicable sentence two to
17   five years below what it would have been except for the
18   intervention of that Supreme Court decision.

19       Given that situation I'll hear you with regard to
20   the motion for downward departure.  It's not necessary
21   for you to get into too much detail because I have read,
22   and I should have noted that when I was summarizing the
23   things that I looked over before coming in here.  I have
24   read, carefully read, Dr. Lester's very extensive
25   evaluation of Mr. McGarrett.

1    I know that Mr. McGarrett had an extremely difficult
2    childhood.  His father was an alcoholic, quite abusive.
3    He left the family.  The mother was left with Mr.
4    McGarrett and his two sisters.

5    The house was quite chaotic.  There was some amount
6    of physical abuse and Mr. McGarrett had a very difficult
7    time with his father's inconsistency.  He ran away from
8    home several times.  He's been seriously abused on at
9    least three different occasions, and he has been
10   diagnosed as suffering from post-traumatic stress
11   syndrome and other difficulties as a result of his
12   extremely difficult upbringing and adolescence.

13   Based upon that I understand, Mr. Ettenberg, that
14   you are asking for me to go below the bottom of the
15   guideline range in imposing the sentence and I'll give
16   you a couple minutes to be heard on that.  But do have in
17   mind that I read your argument and I have carefully read
18   Dr. Lester's report.

19   MR. ETTENBERG:  Judge, I'm not going to belabor
20   a lot of these issues.  What I think is just simply
21   important from my perspective and from Mr. McGarrett's
22   perspective is that this is the end of the line for him,
23   and I kind of told him when we had our conversations in
24   preparation for sentencing that he has to look at this in
25   some fashion as an athletic contest.  He has to leave it

1    all on the field and this is his last opportunity because

2    he has promised me, he has promised his family, that he

3    will never appear in a courtroom ever again.

4         He needs the Court to understand where he sits today

5    in relationship to his past and what he foresees for his

6    future, and so on his behalf I have to leave it all out

7    on the table also.  I will be as brief as I can.

8         What has been happening in Brendan McGarrett's life

9    has been a cry for help.  The problem has been is that

10   there has been no understanding of what the cry was for.

11   He didn't know what he was crying for.  The people that

12   were offering help to him in the past, he didn't

13   translate it correctly in his own mind as to why they

14   were helping him or what his problems were.

15        The interviews and the evaluations conducted by Dr.

16   Lester struck a cord with him.  They struck a cord with

17   his family, and the cord that was struck with Mr.

18   McGarrett is the depth of the problems that he suffers

19   from.

20        Dr. Lester was very candid in his assessments.  He

21   had a great deal of credibility in what he's describing

22   and he didn't try to gild the lily.  He didn't try to

23   paint a glorious picture here of just simply a tragic

24   life with no explanations for it.  He's gone into great

25   depth and that has really hit home to Mr. McGarrett and

1    he understands the depth of the problems that he suffers

2    from and the incredible amount of work that it's going to

3    take for him to become a productive member of society,

4    remain criminal free, and to deal with the many issues,

5    serious issues, that he has to deal with that Dr. Lester

6    has pointed out.

7         Nobody is characterizing Mr. McGarrett's life as a

8    walk in the park and the Court has correctly identified

9    it as a very tragic existence.

10         I said in another sentencing argument for someone

11   who had somewhat of a similar path that if you were to

12   draw a line from the date of Mr. McGarrett's birth to

13   today's date, it's very likely that you wind up seeing

14   him sitting at this table.  I think it was almost forgone

15   that he would wind up here based on that.

16         I know that the argument on the other side can be

17   that he made choices.  Those choices were made not with a

18   clear mind.  Those choices were not made with a clear

19   understanding of why he was doing what he was doing, and

20   as I said in my opening comments here on this that it was

21   a cry for help but no one knew what he was crying for and

22   how to reach him.

23         I think Mr. McGarrett understands what he has to do

24   and I think that Dr. Lester has tried, as best as he can,

25   to show that Mr. McGarrett is different from other

1    individuals with similar paths in their background.

2        I think he has tried to point out that Mr. McGarrett

3    is outside of the heartland of criminals who have a

4    tragic past who commit a number of serious crimes, not

5    only crimes of violence but substance abuse issues.

6        He's got such a multiple network of problems that I

7    think that they do move it outside of the heartland of

8    individuals who have a history similar to Mr. McGarrett.

9    I think his synthesis which begins on page 18 of his

10   report and his prognosis identify those things, and so I

11   think that and I argue to you that there is a reason to

12   depart to some degree.

13       I don't disagree that Mr. McGarrett is in many

14   respects benefitting from the Blakely muddle for lack of

15   a better description and that he does get this so-called

16   bonus.  But I suggest that Dr. Lester has put him even in

17   a different category and that there should be some

18   additional benefit.

19       And why I'm asking for you to consider that

20   additional reduction is because of the light bulb that

21   has now gone on in Mr. McGarrett and his understanding

22   that he's got a long road to go; that these mental health

23   and abuse issues and substance issues that he's been

24   shown and understands are things that are going to be

25   lifelong for him.

1          He's 40 years old.  That his criminal career has

2    ended at this table, and that to allow him some brighter

3    light for him to deal with these issues I think would be

4    beneficial because I think that if he understands that

5    the quicker he can get to a more positive setting that

6    will allow him to deal with these issues in either

7    substance abuse programs as part of supervised release or

8    whatever else, and I'll talk about those at some later

9    time, but I think if the light is brighter for him, he

10   will be able to deal with the myriad of issues that Dr.

11   Lester has identified.  And so I suggest that there is in

12   fact a valid basis for the Court to depart beyond the 92

13   months at the lower end as you already determined.

14          THE COURT:  Thank you.  I'm going to deny the

15   motion for downward departure.  I think that the

16   guideline range of 92 to 115 months is very generous

17   under the circumstances given Mr. McGarrett's record.

18          I don't deny that he has had a very difficult time.

19   I do believe that the facts that were summarized by Dr.

20   Lester would create a situation where the Court, if it

21   was inclined to do so, might be able to exercise its

22   discretion to downward depart, but I'm going to exercise

23   my discretion in this case not to downward depart for a

24   couple of reasons and I want to make those clear on the

25   record.

1    First of all, Mr. McGarrett is getting a sentence

2    which is considerably lower than it would have been if I

3    had been able to take into consideration typical

4    enhancements that would have been considered prior to the

5    Supreme Court's Blakely opinion.

6    Now that Blakely has come down, if Mr. McGarrett

7    were to get indicted now, these issues would be presented

8    to a jury and a very, very likely outcome would be that

9    the jury would find that he was supposed to be suffering

10   these enhancements.

11   So he's in this interim period and he has benefitted

12   from that and therefore the sentence is significantly

13   lower than what it would be either before Blakely or

14   after Blakely gets decided in a few months.  He was

15   caught in the middle or his case appeared in the middle

16   and as a result he's got a benefit.  So that's the first

17   reason why I don't think there's any basis for me to

18   exercise my discretion to downward depart.

19   The second thing is perhaps more serious and I don't

20   want to say anything hurtful to Mr. McGarrett because I

21   do believe that he's sincerely upset about what he's

22   done.  I recognize that he's had a difficult life and

23   difficult problems.

24   I have people before me regularly who have far, far

25   more difficult problems than Mr. McGarrett had.  There is

1 nobody sitting in the courtroom when these people come

2 before me for sentencing. They never saw their father.

3 Their mother is dead. They saw their father beat their

4 mother half to death with a golf club. Their mother was

5 using crack cocaine from the time they were five or six

6 years old. By the time they were ten or eleven years

7 old, they were on the streets selling drugs. They have

8 nobody to come home to. They have nobody who loves them.

9  He has all that and yet the form of crime that he's

10 chosen to express his problems is so terrifying and

11 violent that I'm afraid he's going to kill himself or

12 kill somebody else.

13  He's chosen not to sell drugs or do other things

14 which are bad enough, but to go into a convenience store

15 with a sawed-off shotgun which will blow a person in two

16 if you sneeze while you're holding it, stick it in

17 somebody's face and tell them to give him all the money.

18 That's the symptom that he uses to express his underlying

19 problems.

20  That's a terribly frightening thing for society and

21 for the individual people who encounter it and that's the

22 kind of crime that brought him here, and under the

23 circumstances, even though I sympathize with the very

24 difficult problems that Mr. McGarrett has had, and they

25 are very difficult and they are unique to him and he is I

1   hope committed to addressing them, there really isn't a

2   basis under these issues for me to downward depart.

3        And to the extent that there is a basis in Dr.

4   Lester's report, I do not believe that the exercise of my

5   discretion to downward depart in these circumstances

6   would be appropriate for the reasons I just stated.

7        That leaves us with a Sentencing Guideline range of

8   92 to 115 months and, Mr. Welch, I'll hear the

9   government's recommendation and I'll give Mr. Ettenberg a

10  chance to reply, and then I'll be happy to hear from Mr.

11  McGarrett before I make my final decision.

12       MR. WELCH:  Thank you, Your Honor.  The

13  government will be recommending the full 115 months and

14  here's why.

15       I took the liberty of contacting South Dakota to

16  find out just exactly what Mr. McGarrett said when he was

17  being sentenced there now almost ten years ago when faced

18  with a strikingly similar crime, which is the use of a

19  sawed-off shotgun to rob a convenience store, and this is

20  what he said when he was asked to express what his future

21  goals and objectives were.  "First, and most important,

22  to be reunited with my kids to father them," and then he

23  proposed that he would never again get himself involved

24  in criminal activity again.

25       Released in February of '02 it was only five months

1    later where he repeated the exact same crime. And the
2    Court is correct that he is actually somewhat unique with
3    respect to most defendants who stand here before the
4    Court. This was an individual who actually got more
5    treatment than most defendants do. In the presentence
6    report he talks about how the Oxford House provided him
7    good treatment for six months.
8        He has a mother, two sisters who apparently are a
9    better support network than most families we see in this
10   courtroom. But above all, this was actually an
11   individual who was gainfully employed at the time and
12   earning a good wage, $23 an hour, and so the question
13   becomes why?
14       I mean, why do you take a sawed-off shotgun and
15   stick it in someone's face? And it really comes down to
16   thrill. It's thrill of the crime; it's the power that
17   goes along with it. It's seeing the expression in
18   someone's eyes. That's really what we're talking about
19   here, and this individual is an individual who is violent
20   and therefore the government is recommending the full 115
21   months.
22            THE COURT: All right. Thank you. Mr.
23   Ettenberg.
24            MR. ETTENBERG: Thank you, Judge. I'm asking
25   the Court to sentence at the low end. I don't think

1    that's a surprise.

2        I can tell you, and I don't wish to take up much of

3    the Court's time, I can tell you that Mrs. McGarrett

4    indicated that she would like to speak if the Court would

5    permit.  If not, I will express that to her.  And also

6    there is another gentleman here on behalf of Mr.

7    McGarrett, a Donald Freeman, who has indicated to me that

8    he would like to speak.  I can tell you what they have

9    told me.

10        THE COURT:  I think I'd prefer to have you

11    summarize it because I have letters from the defendant's

12    mother.  I can't imagine that this is anything but

13    absolutely agonizing for her and for her family.  I was

14    just checking and there's a woman with the last name of

15    Freeman.

16        MR. ETTENBERG:  That's from his wife.  Then let

17    me summarize what they would say and then let me make my

18    final comments to you.

19        Mr. Freeman, in response to what Mr. Welch just said

20    about why Mr. McGarrett did the crimes and what he said

21    back in South Dakota -- because when I spoke to Mr.

22    Freeman about what he might say to you, I said to him one

23    of the things that I know Brendan has said in the past is

24    that he won't ever do it again and he won't be here and

25    all of the things that Mr. Welch just commented on.  So I

1    want you to tell the judge why this is different.  What

2    is different?

3        And what is different now is that despite the

4    counseling and the treatment programs and things that Mr.

5    McGarrett had before, he didn't know what he was doing.

6    He was going through the motions.

7        He didn't touch on the issues which are central and

8    core to the problem.  They go beyond the physical and

9    emotional abuse suffered within his family and they touch

10   on the other issues that are addressed by Dr. Lester, the

11   other types of abuse that he comments on, that really

12   struck at Mr. McGarrett that I don't know he ever

13   realized the depth.

14       So what is different now and what Mr. Freeman would

15   tell you is different now is Brendan now gets it.  He now

16   knows why he was doing what he was doing, where the hurt

17   was coming from.  There's no thrill.  There was no power.

18       If those are -- if those are the manifestations of

19   walking into a place with a shotgun, I don't know if

20   Brendan at that time had the ability to comprehend that

21   there was another way.

22       And so I think that what Dr. Lester did was he

23   showed Brendan that there is another way and there is a

24   problem, and this is what the problem is and I think

25   Brendan gets it.  So there is a difference.

1    The difference is that he gets it and he's committed
2    to making a difference with those problems.  He
3    understands it's long term.  He understands it's lifelong
4    and so that's the difference here.
5        He's 40 years old.  He's thrown his life away.
6    Whatever is left of his life is going to be done in a
7    productive way and it's because of his understanding now
8    and his acknowledgement of what his problems were and how
9    to deal with them.
10       I said to Brendan in my conversations you have to be
11   prepared to deal with some very, very painful issues and
12   you can't sluff them off and just can't give lip service.
13   You just say yes, yes, yes.  You've got to process it.
14   You've got to deal with it.  You've got to talk about it.
15       You cannot just simply gloss over these problems
16   anymore because now we have shown you how bad it is, you
17   now have got the key in your own hands to deal with them.
18   So there is a difference now than there was ten years
19   ago.
20       The cry for help that brought him before the Court
21   today has now been understood clearly.  The translation
22   has made it through the airwaves right to Brendan's head
23   and so he's committed to making a difference.
24       Mr. Freeman commented to me that in all of his
25   recent discussions with Brendan while he's been

1     incarcerated, he now understands since the interviews

2     with Dr. Lester.  That Brendan really does get it this

3     time and he has made the commitment to Mr. Freeman; he's

4     made the commitment to his family who are all here in the

5     back row that this is the last time and there is a

6     difference.

7          And I do want to just simply comment about the

8     Court's mention of the fact that there are people who

9     don't have the support and don't have the people that

10    come into court, and that is a difference too because

11    those people recognize what the problems are that Brendan

12    has suffered from.  They have stood behind him and they

13    will continue to stand behind him even more now because

14    he has reached out to them and understood with them that

15    we have to work on this together.

16         These are my problems but I need you to help me deal

17    with those problems.  We have a long road to go together.

18    They have said they're sticking by him and that's so

19    important to his mental health and well being, and that's

20    why I'm suggesting that the low end of the guidelines, if

21    the Court imposes that, gives him at least that brighter

22    light to allow him to put a better picture on what his

23    future is and how he can deal with it.

24         One last thing that I ask the Court to consider by

25    way of incarceration is I suggest very strongly that

1   there should be a substance abuse component of any

2   supervised release.  He has to deal with that.  There is

3   a residential program that he has talked to me about at

4   Spectrum House in Westborough.  It's an intensive nine

5   month residential program.  He has indicated to me that's

6   something he would be interested in attending.

7       The other request that he has made to me and I think

8   it's identified in the presentence report is he does have

9   some medical issues.  He's got some kidney issues and

10  other medical problems, and also he is asking the Court

11  to make a judicial recommendation that he be placed in a

12  facility that can deal with the mental health issues that

13  have been identified by Dr. Lester; that he can be placed

14  in programs within those institutions in an appropriate

15  facility; that he be placed in a facility, if it's

16  appropriate to do so, closest to New England so that his

17  family can visit and support him.

18      I know he has said something -- he has indicated to

19  me, Brendan has, that he would like to address the Court.

20          THE COURT:  You have a right to address me

21  before I make my final decision, Mr. McGarrett, and I

22  certainly would be happy to hear anything that you would

23  like to say.

24          THE DEFENDANT:  Thank you very much, sir.  I

25  can't argue with the prosecutor about what I said years

1    ago in South Dakota.

2         I did do some programs while I was in prison before

3    and I did try to talk about some of the things that had

4    happened when I was younger, but I just never had the

5    strength to be able to do that.  And now realizing

6    through seeing some of the things that happened while I

7    was at the jail in Ludlow, seeing what the other guys

8    were talking about that had happened to them, I realized

9    that a lot of what is happening to me, the reasons that I

10   am here, is because I had some stumbling blocks when I

11   was younger.

12        I didn't feel the same as the other kids and I had

13   things happen to me that really hurt, and for me to be

14   able to talk about them is very difficult and I want to

15   try to do the things that I should have done years ago

16   only I didn't know how to get there.

17        I didn't understand until I spoke to Dr. Lester, who

18   laid out a little bit of what I have to do to get to what

19   I need to be.  And I've been seeing the psychologist

20   since I've been down at Wyatt and still I don't

21   understand and know exactly how it is that I'll get

22   there, exactly how to break these things down, and that's

23   why I want to go to a facility, a medical facility if I

24   can.  I have hepatitis C and I have problems with my

25   kidneys and I need medical attention and I want to try to

1    get through these things before I get back out.

2         I want to try to get through these mental health

3    issues.  I don't know a lot about it.  I'm being honest.

4    I want to do all I can.  While I'm in this time, because

5    I'm going to be in, I want to do all I can to figure out

6    -- I mean, I just don't want to ever come to one of these

7    places again.  I've been saying that all my life and it

8    means nothing if I don't do something about it, and I do

9    have beautiful kids and I do have a good family and I

10   have no excuses for what I did.

11        I'm just asking for mercy and I'm asking that, you

12   know, that you see that what Dr. Lester said in his

13   report and have the understanding.  I can't say for where

14   I'm coming from because the life that I've led is not one

15   that I'm proud of.  I'm ashamed of the things I've done

16   and I apologize to the people and I apologize for the

17   reason that we're here today.

18        I'm asking that I be able to get out as soon as I

19   can to go to a good program and get the things, like I

20   said, while I'm in there so I don't have to come back so

21   that I'll be able to make a difference for myself.  And I

22   want my children to grow up seeing their father as the

23   type of person that I've made myself out to be but my

24   actions is wrong and I realize that.  I'm sorry.

25             THE COURT:  Thank you.  I'm going to impose

1    what may on the surface seem like a sentence that is a

2    little callous but which I think under the circumstances

3    is a fair sentence and it is a compassionate sentence

4    viewing the circumstances from the right perspective.

5         I'm going to impose a sentence of 115 months which

6    is the top of the applicable guideline range here, and I

7    want to make it clear to you, Mr. McGarrett, why I'm

8    doing that and what my hopes are for you.

9         I'm certainly going to make a recommendation that

10   you be kept at Ft. Devons which is a medical facility

11   which is here in the State of Massachusetts, or if that

12   facility is unable to receive you because of overcrowding

13   or for any other reason, that you be at a facility which

14   has programs that will address your medical problems,

15   that will have programs for substance abuse and you have

16   programs to deal with your mental health problems.  That

17   will all be available to you at the facility, whether

18   it's Ft. Devons or somewhere else, that I will be

19   recommending you to go to.

20        A 115 month sentence I repeat is a substantial break

21   for what you would have gotten at almost any other time.

22   The fact that you used the sawed-off shotgun as the

23   government charges at least during the course of an armed

24   robbery would either have been found by me as a judge or

25   in a few months may be found by a jury under the

1    circumstances and you would have to bear responsibility

2    for having done that.

3         The fact that there was a high-speed chase

4    immediately after the armed robbery is another fact that

5    would have been taken into consideration.  All that has

6    been wiped out.  It isn't being considered and the extra

7    two to five years sentence which you would have gotten at

8    any other time as a result of that conduct is not coming

9    down on you.

10        So the 115 months is an appropriate sentence for

11   this crime and in view of your record.  I think you've

12   got a hard road to go.  I think you've still got some

13   work to do.  The business about the failure of the

14   treatment system to come through for you, there is not

15   going to be any treatment system that's going to be

16   perfect.  It's always going to be a disappointment.

17        You are a tough, tough patient or client for anybody

18   to have, and just about any system social service is

19   going to be strained to try to deal with you.  Those

20   people are going to let you down.

21        The fact that you were in a drug-infested

22   neighborhood, I'm sorry to give you the news but drugs

23   are anywhere.  Anywhere you want to get them, you're

24   going to be able to get them.  It's going to be you that

25   has got to make the decision not to do that because you

1   will be able to get them any time you want to take a
2   20-minute walk unfortunately or a 20-minute drive in the
3   society that we have now.

4        So it's going to be ultimately your choice and the
5   strengths that you find inside you to make these changes
6   and not any externals that are going to make the
7   difference.

8        I hope that I can do everything I can to make sure
9   that you get those externals and that you get the best
10  support that is available.  But, as I say, we're dealing
11  with a social network that has holes in it and if you
12  want to keep from plunging right down into the abyss,
13  it's going to have to be you that grabs a hold of
14  whatever ropes are available and find the strengths in
15  yourself to make these changes.  Otherwise, I'm afraid
16  we're going to end up reading in the paper someday about
17  you being in an incident and either you or somebody else
18  who got tangled up with you but is no longer going to be
19  with us.  That's how scary the situation is.

20       So this is the sentence that I'm going to impose in
21  light of the Supreme Court's _Blakely_ decision.  Pursuant
22  to the Sentencing Reform Act of 1984, it is my judgment
23  that the defendant Brendan McGarrett be committed to the
24  custody of the Bureau of Prisons to be imprisoned for a
25  term of 115 months.

1    This term consists of terms of 115 months on each
2    count to be served concurrently.  Upon release from
3    imprisonment, the defendant shall be placed on supervised
4    release for a term of three years.  This term consists of
5    terms of three years on each count, all such terms to run
6    concurrently.
7        So you will be under the supervision of the
8    probation office once you finish up your sentence and
9    you're out.  Within 72 hours of release from custody of
10   the Bureau of Prisons, the defendant shall report in
11   person to the district to which he's released.
12       Before I get onto the conditions of your supervised
13   release, I want the record to reflect several
14   recommendations I'm making with respect to your place of
15   confinement.
16       First, I'm going to recommend that your place of
17   confinement be Ft. Devons.  That is the closest federal
18   facility that will allow your family to visit you.
19       I'm going to recommended that whatever facility you
20   are placed in has appropriate resources to deal with your
21   medical problems, your hepatitis C, your kidney problems;
22   that it has a program to assist you in substance abuse
23   and that it have mental health programs to assist you as
24   well.  Those will be the three types of programs that I
25   will recommend you be permitted to participate in while

1    you're under confinement.

2        As I say, once you finish the sentence, you will be

3    placed on supervised release for three years.  While on

4    supervised release the defendant shall not commit any

5    other federal, state, or local crime.

6        He shall refrain from any unlawful use of a

7    controlled substance and he shall submit to one drug test

8    within 15 days of release from imprisonment and at least

9    two periodic drug tests thereafter not to exceed 104

10   tests per year as directed by the probation officer.

11       Also, the defendant shall submit to the collection

12   of a DNA sample as directed by the probation officer.

13   That condition is mandatory now in connection with

14   everybody that I sentence not just you, Mr. McGarrett.

15   Congress has passed the statute that all persons

16   sentenced in federal court must submit to the collection

17   of a DNA sample.

18       In addition, the defendant shall comply with the

19   standard conditions that are described in the Sentencing

20   Guidelines at Section 5D1.3(c), and shall comply with the

21   following special conditions:  First, the defendant is

22   prohibited from possessing a firearm or other dangerous

23   weapon.

24       Second, he is to participate in a program for

25   substance abuse as requested -- as directed by the United

1   States Probation Office which program may include testing

2   not to exceed 104 drug tests per year to determine

3   whether the defendant has reverted to the use of alcohol

4   or drugs.

5   The defendant shall be required to contribute to the

6   costs of services for such treatment based upon his

7   ability to pay or the availability of third-party

8   payment.

9   Next, while on supervised release the defendant is

10  to participate in a mental health treatment program as

11  directed by the United States Probation Office, and the

12  defendant shall be required to contribute to the costs of

13  the services for such treatment again based on his

14  ability to pay or the availability of third-party

15  payment.

16  It is further ordered that the defendant shall pay

17  to the United States a special assessment of $300 which

18  shall be due immediately.

19  I order that the defendant be remanded to the

20  custody of the marshal for designation of his place of

21  confinement.

22  I also inform you, Mr. McGarrett, that you have a

23  right to appeal this sentence.  The fact that you have

24  pled guilty does not deprive you of the right to appeal.

25  If you wish to appeal and you cannot afford an attorney

1    to represent you, one will be appointed to represent you
2    who will be paid out of public funds.
3        I want to thank you, Mr. Ettenberg.  It was a very
4    excellent job on behalf of Mr. McGarrett and the report
5    of Dr. Lester was, as always, extremely detailed and
6    helpful.
7        I do believe that this is an appropriate sentence
8    for Mr. McGarrett and I very, very much hope that this
9    will be a turning point for him.  Really whether the
10   sentence was 92 months or 115 months is really close to
11   irrelevant, but what really counts is whether this is a
12   turning point for you and your children and for your
13   family, Mr. McGarrett.  I very much hope that it is.
14       With that the Court will take a short recess, just
15   a couple minutes, to allow the marshals to clear Mr.
16   McGarrett out of the room and we'll come back and we will
17   take up the Ortiz matter, then Hutchins, and then move on
18   to Rosie D.
19
20                (Court recessed at 4:09.)
21
22
23
24
25

```
 1    UNITED STATES OF AMERICA
      DISTRICT OF MASSACHUSETTS
 2    CITY OF SPRINGFIELD

 3

 4

 5            I, Alice Moran, do hereby certify that the

 6    foregoing is a true and accurate transcription of my

 7    stenographic notes to the best of my knowledge and

 8    ability.

 9            Certified on June 27, 2005.  My commission

10    expires on April 13, 2012.

11

12

13                        _____
                          Alice Moran, CSR, RPR, RMR
14                        Official Federal Court Reporter

15

16

17

18

19

20

21

22

23

24

25
```

STATE OF SOUTH DAKOTA    )                              IN CIRCUIT COURT
                         : SS
COUNTY OF DAVISON        )                         FOURTH JUDICIAL CIRCUIT

                              FILED IN CIRCUIT COURT
                              DAVISON COUNTY, S. D.

STATE OF SOUTH DAKOTA,    AND RECORDED IN VOL._____      CRIM. #93-457
                          OF _____ PAGE _____
          Plaintiff,          )
                                 APR 14 1994
          vs.                 )                              INFORMATION

BRENDAN A. McGARRETT,         Carol J. Mertens
          Defendant.          )
                              CLERK OF CIRCUIT COURT


        Douglas N. Papendick/Beverly J. Brimmer, as prosecuting attorney, in the
name of and by the authority in the State of South Dakota, makes and files this
Information against Brendan A. McGarrett and charges as to:

                                  COUNT I

        That on or about the 22nd day of August, 1993, in the County of Davison,
State of South Dakota, the Defendant committed the public offense of Grand Theft
(Class 4 Felony), in violation of SDCL 22-30A-1 (SDCL 22-30A-17(1)), in that he
took or exercised control over property of another, to-wit:  cash belonging to
the Corner Pantry, with intent to deprive the Corner Pantry of said property, the
value of which is more than $500.00; contrary to statute in such case made and
provided against the peace and dignity of the State of South Dakota.

        Dated this ___14th___ day of ___April___, 1994, in Mitchell, South Dakota.


                                       _____
                                       Prosecuting Attorney

STATE OF SOUTH DAKOTA    )
                         : SS
COUNTY OF DAVISON        )

        Douglas N. Papendick/Beverly J. Brimmer, being first duly sworn, states
that he/she is the prosecuting attorney for the above matter, that he/she has
read the foregoing Information, and the same is true to his/her own best
knowledge, information and belief.


                                       _____
                                       Prosecuting Attorney

Subscribed and sworn to before me this 14th day of April, 1994.

STATE OF SOUTH DAKOTA}
COUNTY OF DAVISON
I hereby certify that I have carefully examined the
within instrument and compared the same with the
original now on file in this office, and that it is a
true and correct copy of same, and that the filing
shown thereon is a true and correct copy of the
filing on the original.
Dated _____ 3 ___ 20_02_
                              Johnsen
_____
Clerk of Court

                                       _____
                                       Notary Public - South Dakota
                                       My Commission Expires: _5/8/2001_

                                       (SEAL)

GOVERNMENT
EXHIBIT
B

WITNESSES KNOWN TO THE PROSECUTING ATTORNEY AT THE TIME OF THE FILING OF THIS INFORMATION:

Laurie Kiner, Corner Pantry, Mitchell, SD
Detective Charlie Larson, MPD
Pat Sibson
Steve Epp
Mark Kessler, MPD

WITNESSES WHO BECAME KNOWN TO THE PROSECUTING ATTORNEY AFTER THE FILING OF THE INFORMATION AND ENDORSED WITH THE PERMISSION OF THE COURT:

STATE OF SOUTH DAKOTA    )
                         : SS
COUNTY    OF    DAVISON  )

    Douglas N. Papendick/Beverly J. Brimmer, prosecuting attorney in the above matter, hereby states that the alleged offense was committed on August 22, 1993, at the Corner Pantry located in Mitchell, Davison County, South Dakota. I hereby request that Defendant or his attorney serve upon me a written notice of his intention to offer a defense of alibi within ten days as provided in SDCL 23A-9-1.  Failure to provide such notice of an alibi defense may result in exclusion of any testimony pertaining to an alibi defense.

_____
Prosecuting Attorney

STATE OF SOUTH DAKOTA )                FILED IN CIRCUIT COURT          IN CIRCUIT COURT
                                       : SS.                          AND RECORDED IN VOL. ___25___
COUNTY OF DAVISON )                    OF ___CRIM___ PAGE _295_ FOURTH JUDICIAL CIRCUIT

STATE OF SOUTH DAKOTA,                            )                    CR 93-457
                                  APR 15 1994     )
            Plaintiff,                            )

      vs.                          Carol J. Meertens  JUDGMENT OF CONVICTION

BRENDAN A. McGARRETT,              CLERK OF CIRCUIT COURT

            Defendant.                           )

      An Information was filed with this Court charging the Defendant with the offense of Grand Theft (Class 4 Felony), in violation of SDCL 22-30A-1. The Defendant was arraigned on the Information on the 14th day of April, 1994, at Mitchell, Davison County, South Dakota. The Defendant, being represented by counsel, Donna L. Bucher, and Douglas N. Papendick, prosecuting attorney, appeared at the Defendant's arraignment. The Court advised the Defendant of all constitutional and statutory rights pertaining to the charge that had been filed against the Defendant. The Defendant entered a plea of Guilty to the charge of Grand Theft (Class 4 Felony), in violation of SDCL 22-30A-1.

      It is the determination of this Court that the Defendant has been regularly held to answer for said offense; that said plea was voluntary, knowing and intelligent; that the Defendant was represented by competent counsel, and that a factual basis existed for the plea.

      It is, therefore, the JUDGMENT of this Court that the Defendant is Guilty of Grand Theft (Class 4 Felony), in violation of SDCL 22-30A-1.

### SENTENCE

      On the 14th day of April, 1994, the Court asked the Defendant if any legal cause existed to show why Judgment should not be pronounced. There being no cause offered, the Court thereupon pronounced the following sentence:

      IT IS HEREBY ORDERED that the Defendant, BRENDAN A. McGARRETT, be imprisoned in the State Penitentiary of the State of South Dakota at Sioux Falls, South Dakota, in and for said State, for the full term and period of Five (5) years, there to be kept, fed and clothed according to the rules and discipline governing the said penitentiary.

      IT IS FURTHER ORDERED that the penitentiary sentence herein imposed shall run concurrently with the penitentiary sentenced imposed in Pennington County, South Dakota.

      IT IS FURTHER ORDERED that the Defendant be given credit for __57__ days already served, to be applied toward good time.

      IT IS FURTHER ORDERED that the Defendant is remanded to the custody of the Davison County Sheriff.

      Dated this __15__ day of April, 1994, at Mitchell, Davison County, South

Dakota, nunc pro tunc to April 14, 1994.

BY THE COURT:

_____

Lee D. Anderson
Judge of the Circuit Court

ATTEST:

/s/ CAROL J. MERTENS
Clerk of Courts
By _____
        Deputy

(SEAL)

STATE OF SOUTH DAKOTA }
COUNTY OF DAVISON      }
I hereby certify that I have carefully examined the
within instrument and compared the same with the
original now on file in this office, and that it is a
true and correct copy of same, and that the filing
shown thereon is a true and correct copy of the
filing on the original.
Dated _____ 20___

_____
                Clerk of Court

NOTICE OF RIGHT TO APPEAL

        You are hereby notified that a Judgment of Conviction has been signed,
attested and filed with the Davison County Clerk of Courts and that you have a
right to appeal from the judgment as provided by SDCL 23A-32-15, which you must
exercise by serving a written notice of appeal upon the Attorney General of
South Dakota and the State's Attorney of Davison County and by filing a copy of
the same, together with proof of such service with the Clerk within thirty (30)
days from the date that this Judgment is filed with said Clerk.

## AFFIDAVIT OF PETER ETTENBERG

I, Peter L. Ettenberg, being duly sworn, state as follows:

1.  I am an attorney licensed to practice in Massachusetts and have been practicing law since approximately 1973. My practice includes criminal defense both in state court and federal court. I have extensive experience in federal court and have easily handled well in excess of hundred federal criminal cases during my career.

2.  I represented Brendan McGarrett in <u>United States v. Brendan McGarrett</u>, CR-02-30042-MAP. I have reviewed Mr. McGarrett's habeas corpus petition, and in particular, the allegation that Mr. McGarrett asked me to file a notice of appeal, and that I agreed to file a notice of appeal on his behalf.

3.  My recollection is that after Mr. McGarrett was sentenced, Mr. McGarrett indicated to me that he wanted to appeal his sentence. To the best of my memory, I told Mr. McGarrett that I did not think that Mr. McGarrett had any appealable issues, but that I would look into the matter. I do not believe that I told Mr. McGarrett that I in fact would file a notice of appeal on his behalf.

4.  The reason that I believe that I did not tell Mr. McGarrett that I in fact would file a notice of appeal is because I recall that the district court, in pronouncing its sentence, stated that it would have imposed the same sentence whether or not the Sentencing Guidelines were subsequently determined to be constitutional. In addition, I specifically moved for a downward departure, but the district court denied that motion. Finally, I did not want to file a notice of appeal because I knew that it would be very difficult to withdraw my appearance before the First Circuit, and I saw no appellate issues.

PETER L. ETTENBERG

1

GOVERNMENT
EXHIBIT
C